Next case is Gillespie School District v. Wight & Company for the Appellant, Mr. Perticchio, and for the Appellee, Ms. Bloom. Did I pronounce that correctly? Yes. You may proceed. May it please the Court, good afternoon. I'm Thomas Perticchio. I represent the Appellant of the Gillespie School District. Your Honors, the statute of limitations governing claims against architects concerning design, planning, supervision, observation, and management of construction requires that an action be filed within four years of the time that the plaintiff knew or reasonably should have known of the wrongful act or omission. That's at Section 13214A of our Code of Civil Procedure. The statute then provides that these limitations, quote, shall not apply to causes of action arising out of fraudulent misrepresentation at Section 214E. In the fall of 1998, the school district was considering a proposed location for its new elementary school in Benalde or around Benalde, Illinois. In January 1999, the school district and the Appellee, Wight & Company, entered into a contract with Wight as the architect. It's entitled the Pre-Referendum Service Agreement, and it obligated Wight to provide the school district with architectural and engineering services, including having a design team examine the extent of coal mining underneath the proposed site. Specifically, the site mine investigation provision of the agreement provided that Wight's subsidence, quote, investigation was to result in an analysis of the proposed building site for suitability of construction and implication on proposed structural systems. As part of its investigation, Wight hired an engineering firm, Hanson Engineering, and in February 1999, approximately a month after the school district entered into its pre-referendum agreement with Wight, Hanson delivered to Wight a mine subsidence report. The report concluded that, quote, based on a number of ground subsidence events, it can intuitively be concluded that there is a relatively high risk of subsidence in the Benalde-Glisby area, specifically the location in Benalde where the school district was proposing its new elementary school. Hanson delivered the report to Wight. Wight did not deliver it to the school district. Hanson wrote up another report, which Wight delivered. Instead of delivering the 1999 report, Wight delivered to the school district Hanson's foundation engineering report in March of 2000. Now the foundation engineering report did not include any of the analysis or study that was included in the original report and instead concluded, essentially, I don't have the language in front of me, but essentially, there could be subsidence, maybe there won't be subsidence, we're not sure. It did not include the conclusion that Hanson had reached when doing its specific mine subsidence study that, based upon the number of ground subsidence events, it can be intuitively concluded that there is a relatively high risk of subsidence in the area. Not possessing that earlier report, the school district then chose its site for the school as the one it was considering when it engaged Wight and that was the property immediately adjacent to its old school, its existing school in Benalde, Illinois. After the site selection, the school district and Wight entered into another contract called the Standard Agreement. It's your standard form of architect service agreement and that was signed by the parties in September of 2000. Construction on the school began after the school district then entered into its construction contract with its general contractor, Burkle Construction, which designated Wight as the architect. Still having never seen the Hanson report regarding the conclusion that it was a likelihood, relatively high risk of subsidence on the site, the construction began and it ended in late summer, fall of 2002 and the school district opened its new school in August of 2002. March 2009, almost as Hanson had predicted, there was a massive mine subsidence beneath the school district and within weeks the State Board of Education condemned the school. A little more than four months later, in August of 2009, the school district initiated an action against Wight based on theories of architect malpractice, implied breach of warranty, and then with an additional amendment, fraudulent misrepresentation by concealment of material facts. Wight moved for summary judgment, arguing that the claims were all barred by the statute of limitations, that the lawsuit filed four months after the subsidence just came too late. Wight based its motion for summary judgment on a clause in the Standard Agreement and that clause, which is deemed the statute of limitations provision in the briefs, your honor, reads as follows. Quote, causes of action between the parties to this agreement pertaining to acts or failures to acts shall be deemed to have approved and the applicable statutes of limitations shall commence to run not later than the date of capital S substantial, capital C completion, for acts or failures to act occurring prior to substantial completion. In no event shall such statutes of limitations commence to run any later than the date when the architect's services are substantially completed. The trial court ruled that the claims were time barred, that under the statute of limitations provision the claims filed in 2009 came too late, therefore the trial court granted Wight's motion for summary judgment on all claims. Respectfully, the trial court committed error for four separate reasons. First, the statute of limitations provision contained within the Standard Agreement signed in September 2000 was not implemented and included and merged into the pre-referendum agreement, so it simply does not apply. That clause, by the way, is a AIA standard clause designed to do away with the discovery rule in the statute of limitations? It's certainly part of the Standard Agreement, Your Honor, and it has been construed as, if it applies to the claim, it would do away with the discovery rule. That's the first reason the trial court committed error, because the clause does not apply to the pre-referendum agreement from January 1999 upon which the school district bases its claims. Secondly, the term substantial completion, which was the trigger date in the clause for the commencing of the statute of limitations, simply does not apply to the relationship between the school district and Wight. Third, the school district's unrebutted allegations and, significantly, the summary judgment record shows that material issues of fact exist on the question of whether the contract services were, in actuality, substantially completed so as to trigger any statute of limitations clause, even if it applied. You know, the statute of limitations that we're dealing with, 13-14, talks about tort actions for an act or omission. So that sounds like the statute of limitations applies not just to acts that have been completed, but to parts of contracts that have not been completed, doesn't it? I would agree with that, Your Honor. And in this case, the omission was the failure to tender to the school district the Hansen Report. And according to the statute of limitations, four years after that omission, you're out of luck. Well, the statute says, Your Honor, in Section A, 214A, four years after the school district knew or should have known of the omission. And the school district, frankly, did not even know of the Hansen Report until the discovery of this litigation. That part of the statute is wiped out by the standard clause in the contract, which you just quoted a minute ago. And that's, once you roll up the sleeves, it's explained why that standard clause doesn't apply to these claims. And with regard to the first reason that the trial court erred, is that the merger provision of the standard agreement says that, with regard to the pre-referendum agreement, remembering the pre-referendum agreement is the agreement that required the mine subsidence study. And the standard agreement says, with regard to the pre-referendum agreement, the dispute resolution provision of the standard agreement applies and will be merged into that. So the specific merger clause within the standard agreement, referencing the pre-referendum agreement upon which the claims are based, does not include within it anything about the statute of limitations provision in the contract claim, in the standard agreement. It only merges within it the dispute resolution provision. Now, White says, oh no, that can't be, that's not right. Everything's merged into the pre-referendum agreement. And it bases its argument upon Article 1.4.1 of the agreement that says, this agreement represents the entire and integrated agreement between owner and architect, and supersedes all prior negotiations, representations, or agreements, either written or oral. And then this agreement comprises the documents listed below, and it includes the pre-referendum agreement. So according to White's argument, everything is merged. There's multiple problems with the argument. First, that's not a merger clause. All that is is an integration clause. And we cited the case of Midwest Builders, Your Honors. Midwest Builders Court says that integrated means, quote, final and complete expression of the party's agreement. It has nothing to do with merger. The only merger clause within the standard agreement relating to the pre-referendum agreement is the dispute resolution clause. It says that the pre-referendum agreement will be subject to the dispute resolution clause. That's the only clause that therefore merged into the pre-referendum agreement.  Because if you were to conclude, as White argues, that the integration clause somehow merges everything into both agreements, then the dispute resolution merger clause, the more narrow clause, would have no meaning. There would be no need for it. And we cited the case of Bank and Trust of Illinois v. Village of Orland Hills, where the court said, quote, a court will not interpret an agreement in a way that would nullify its provisions and render them meaningless. And unless we read the agreement as written, and the only merger clause that specifically says dispute resolutions apply to that earlier agreement, if we read the agreement such that everything applies, then we're reading the dispute resolution clause out of the agreement. More importantly, the law in this state for a long time has been, if there's a clause or two clauses in the contract dealing with the same issue, if we could somehow stretch ourselves to say that that integration clause really is a merger clause, because maybe that's what someone intended, if we can somehow get there, the law in this state is that we've got two clauses on merger. One, the specific only dispute resolutions apply to the referendum, pre-referendum agreement. And another, more broad, more general, here's what the court said. And we cited you, the Grievous Court, Illinois Supreme Court case at 152 Illinois 2nd. The court said, quote, courts and legal scholars have long recognized that where both the general and a specific provision in a contract address the same subject, the more specific provision controls. So even if we could stretch and argue and somehow reach a conclusion that that general integration clause is a merger clause, it would still not control the date. Because the Grievous Court tells us, the Illinois Supreme Court says, the specific controls. How about the fact that the clause we're talking about in the standard agreement says, causes of action between the parties to this agreement pertaining to acts or failures to acts shall be deemed to have accrued. It doesn't say causes of action under this agreement. It just says any causes of action between the parties. And it's clear that White and the school are parties to this agreement. Well, it says causes of action between the parties to this agreement. This agreement being the standard agreement. There's nothing within that clause to say, and an agreement that the school district entered into with White in 1999. It doesn't say causes of action under this agreement. It says any causes of action between the parties to this agreement. Whether they come under the agreement or come from some other source. I understand your question, Your Honor, and it's certainly a fair reading. It's certainly a fair reading to restrict it to this specific agreement. But if it's not, then we're left with the conclusion of, well, what does it mean? And is there an ambiguity? And we've cited to you the cases that in the event of an ambiguity, it must be read in favor of the school district. Because Illinois law, the Midwest Builder case, and the other cases in the brief stand for the proposition, that when you're dealing with a statute of limitations and a contractual provision that seeks to limit statutes of limitation, they must be strictly construed so as to we can get to the merits. But beyond that, Your Honor. In this case, federal insurance versus constant architecture says this AIA clause, no problem with it. No question it does. No question it does. And in the constant architecture case, there was no separate agreement upon which the parties' cause of action was based. Here we have the pre-referendum agreement. Clearly a separate agreement upon which the cause of action is based, not merged into a more general agreement. In constant architect, there was no even argument or hint of an ambiguity. When you look and parse through the sections of the briefs, Your Honor, the sections of the contract, all laid out in the briefs, one is left with the conclusion that it's a tangled mess, leading to the conclusion that there's an ambiguity here. In constant architect, no one argued ambiguity. The contract was clear and on its face. And that brings us beyond that there was no merger of an end to the agreement. It brings us to the recognition that the trigger for the statute of limitations, the trigger in the contract itself, was substantial completion. And under the terms of the parties' agreement, substantial completion applies not to the relationship. These are all defined terms laid out in the brief, Your Honor. Probably the best place is page three of the reply brief. The terms of the party agreement provides that substantial completion concerns the relationship, not between the school district and White, but between the school district and Burkle Construction, the company that actually built the school. And interestingly, for the first time, for the first time, we reveal in White's brief in this court that White agrees with that. White agrees that substantial completion simply does not... Here's what White said. Isn't an architect's work substantially completed when the contractor finishes the building? Well, under the term, the capitalized term substantial agreement, substantial completion, White doesn't apply. So now we're left with the last section. I think you're referring to the last section of the clause that says, under no circumstance will it run past when White is substantially completed, small s, small c. And the Midwest Builders case, on the point you raised, Your Honor, is exactly on point. Midwest Builders says that in the case of a breach of contract, in a case where parties are taking issues with performance under the contract, the claim of breach precludes the conclusion that the services have been substantially completed. Now, if you go down through the case and determine that there's been no breach, then yes, there's been substantial completion. But Midwest Builders stands for the exact proposition that you just raised in reference, that if the parties claim breach, claim failure to perform, there cannot, as a matter of law, be substantial completion until there's a determination on that claim of breach. Again, that just seems completely contrary to the idea of statutes of limitation. Because 214 that you talk about talks about acts for omissions. How can a statute of limitations begin to run after an omission if your argument is correct? Well, that's a public policy determination, Your Honor, that respectfully the legislature has spoken on, that the legislature in 214A says that with regard to these things, including omissions, as you point out, the four-year statute of limitations begins to run when the plaintiff knew or should have known. And in our case, the plaintiff did not know, and no one even suggests that it should have known about the existence of the Hansen Report until it was delivered or discovered, in this case, sometime in 2010. And when you parse through the definition of substantial completion, you find that it doesn't apply to the school district and its relationship with White. Beyond that, Your Honors, the trial court erred because substantial completion, by its own definition within the terms, requires that two things occur. The work be done in accordance with, quote, in accordance with the party's agreements, and two, the work be utilized for its intended purposes. Now, neither the trial court nor White in this court recognizes the first requirement. They only say in the trial court held, well, it moved in in 2002 and opened the school. Four years later, 2006, 2009 lawsuit, too late. So the statute of limitations never runs. If there's a breach of contract, the statute of limitations never runs. If there's a question of fact on the issue about whether the party knew or should have known about the omission, then the statute of limitation runs four years from the time they knew or should have known. There's nothing at all unusual about that. So if this collapse had occurred 20 years later, you'd still have a right to the lawsuit? Assuming that the school district did not know or should not have known about that Hansen report? Absolutely. Absolutely. Because it would still have not reasonably known that it had an action, and on the question of fact issue at summary judgment. White would still not, under the record of this case, have performed in accordance with the party's agreement. And we laid out in our briefs, Your Honor, the unopposed evidence. There was an affidavit by the regional superintendent of schools in opposition to the motion for summary judgment. It lays out completely all the questions of fact relating to White's work. And finally, Your Honor, the fourth error. Or that the trial court made when concluding that summary judgment was appropriate, is on count six. Because count six is based on the claim of fraudulent misrepresentation by the concealment of facts. Trial court concluded, time barred. Trial court applied a five-year statute of limitations. Section 214E specifically says that the limitations periods with regard to architects on the omissions, on the management, on the observation, do not apply to claims of fraud. There is no statute of limitations. With regard to the fraud claim, you're absolutely right, Your Honor. How about the very next section, which says, this is 13-215. If a person liable to an action fraudulently conceals the cause of action, the action may be commenced at any time within five years after discovery. Two observations on that. That section doesn't deal with or concern a cause of action for fraudulent misrepresentation by concealment of facts. That section deals with, I have a cause of action, whatever it may be, and the defendant does something thereafter to conceal my ability to discover the cause of action. How about 13-205, which the trial court applied? It said, 205 says if nothing else applies, then this applies. Well, 205 once applied. And then the legislature amended the statute and enacted 13-214E. And that section, once enacted, overrules and controls over 205. And that's exactly what the court held in the Continental Insurance case, where the court said, quote, Section 13-205 has been held inapplicable to architects, engineers, and contractors after the passage of 13-214. Because 13-214 unambiguously says it applies to architects. It dropped down to E. Fraud does not apply. You're out of time for this portion of your argument, Mr. Peticchio. Thank you, Your Honors. Ms. Bloom? Thank you. May it please the Court, Anne Bloom on behalf of White & Company, and we think that the trial court granted summary judgment appropriately, and we're going to ask that this court affirm that rule. Taking a look at the parties' agreement, the contract between the parties, this afternoon we've heard some arguments made that maybe it's integrated, but it's not merged. Let's just put the labels aside and read the document. Let's look at specifically paragraph 1.4.1 of the B141. It says, Enumeration of the Parts of the Agreement. This agreement represents the entire and integrated agreement between the owner and architect and supersedes all prior negotiations, representations, or agreements written or oral. And it goes on to list the various documents which comprise the parties' agreement. Included in there is the pre-referendum agreement that counsel referenced their claims are being brought under. It's our submission that that pre-referendum services agreement is part of the parties' agreement, one word, one agreement. And to be sure of that, paragraph 2.8.3, which is the next part of the B141, makes very clear, it says, services identified in 2.8.3.1 through 2.8.3.5 above were provided under the pre-referendum services agreement and the Part 1 Design-Build Construction Contract dated October 21, 1999. And then it says, present Exhibit C to the agreement. And then it says, and this is of particular importance, all of the services provided under the pre-referendum services agreement and the Part 1 Design-Build Construction Contract are covered by the terms of this agreement. Really no ambiguity. It shouldn't be any question that it is one agreement to which the paragraph 1.3.7.3 applies. The parties' agreement is not ambiguous. We all know that ambiguity requires two reasonable constructions. The school district has never articulated a reasonable construction of what 1.3.7.3 means. We have a disagreement between the parties, but that doesn't mean it's ambiguous. The AIA-201, which is one of the enumerated documents, part of the parties' agreement, goes on to define all of the relevant terms. It defines substantial completion. It defines work. It defines contract documents. And there's no ambiguity. In order to come to the school district's conclusion, you really have to substitute words, which is something that happens from time to time in some of the school district's arguments. For instance, when they start talking about substantial completion, which the document, the contract, defines as stage in the progress of the work with a capital W, defined term, or designated portion thereof, such as the work of a phase of a project, is sufficiently complete in accordance with the contract documents. Well, contract documents is a defined term. One of the school district's arguments says, and it just substitutes the words, instead of contract documents, it substitutes parties' agreements. Well, that's not what the document says. That's not what the parties agreed to. So we really need to pay very close attention to the precise words in the agreement. Many courts before this court, as Justice Cook noted, Federal v. Constant addressed this paragraph 1.3.7.3. I think it was provision 9.3 in the document that issued in that case. But there are several other courts across the country that have all addressed these provisions and said it's fair for the parties to agree that a statute of limitations will accrue at substantial completion, which is when the owner can use the work. Well, what about Mr. Berticchio's argument that federal didn't involve the issue we have here, where there's a question of ambiguity? Isn't it sort of troublesome that the pre-referendum agreement didn't contain this clause? No, because the pre-referendum agreement is part of the v. 141. It was added as pre-referendum. I'm thinking about all this. Here's a school that has some doubts about subsistence. They enter into an agreement with the architect, a pre-referendum agreement, directing the architect to do some studies. And the architect doesn't put in any clause there that does away with the discovery rule. And then the architect doesn't comply with the agreement. Isn't that troublesome? No, it's not. Because the parties agreed at the contracting stage, when they were getting ready to design and build the school, September 2000, that all of the work that had been performed under the pre-referendum services agreement and some other documents, the foundation engineering report from Hansen, the preliminary design report from White & Company, the topographic and boundary survey that Hansen had provided, all of these documents were going to comprise the parties' agreement, and all of the work that's performed pursuant to those other pieces of paper would be part of the agreement, capital A as I keep calling it, to which 1.3.7.3 does apply. And I don't know of any reason that we can't find that based on paragraph 1.4.1 and 2.8.3, to which I'll make clear that this is one agreement. It is fully integrated, and it is intended to be one expression of the parties' agreement. What possible reason is there for your clients not to pass along the Hansen report to the school district? Well, that's not, first of all, clear at all that we ever had that agreement, and it's not really part of the summary judgment record, Your Honor. And to that end, what is part of the parties' agreement, which is part of the summary judgment record, is the Hansen report dated, I think it's March of 2000, March 23rd, 2000, which says, due to the many unknown variables involved in predicting both the chance of subsidence and its possible magnitude, it is nearly impossible to quantify the risk involved in building on an undermined site. It goes on to say, surface investigations undertaken to predict the possibility of future subsidence are always very expensive and generally inconclusive. The owner should consider the fact that there is no economically feasible corrective action that can be taken to guarantee against future subsidence. It goes on to say, the risk of future subsidence must be valued along with the other features of the site with the knowledge that it will not be possible to completely avoid similar risks in the area closely surrounding Pinellas, Illinois. In addition, this school was built on the same property where a school had existed, and I apologize. For a long time. For 80 years, for a really long time. So, it's not as though something, you know, some investigation was done and there was absolutely no warning. There was a warning. And we are not conceding that the Hansen, I think it's a draft report that was produced during discovery, was ever even turned over to White. So, I want to be very clear about that and I thank you very much for bringing that up. We've demonstrated in our briefs that paragraph 1.3.7.3 has two sentences. One, the first sentence speaks to when the project achieved substantial completion. Capital S, capital C means that the owner is using the work. The last sentence, there is no substantial completion for whatever reason. The last sentence isn't applicable here for a variety of reasons, mostly because the project did achieve substantial completion. There's really no dispute that the school district started using the building in August 2009, 2002. That's not a dispute. So, you're saying it's not clear that the architect had substantially completed his work? No, we did. I'm not saying that at all, Your Honor. I'm sorry. When you said the last sentence. The last sentence of 1.3.7.3 is not applicable. That sentence says, in no event shall such statutes of limitation commence to run any later than the date when the architect's services are substantially completed. Well, substantially completed in that sentence is not capitalized. So, the first sentence speaks to if there's an act or omission that's the basis of a lawsuit, if it occurs before substantial completion, then the cause of action starts running at substantial completion. If the act or omission at issue is alleged to have occurred after substantial completion, then it starts running at the final certificate for payment. So, those are the two instances where there is substantial completion. The last sentence doesn't apply. Well, in addition, because I think it's the school district's not saying that. Excuse me just a second. They're not saying that. I'm sorry. If anything, the school district is saying that we're trying to start the statute of limitations before we substantially completed our work. They're not saying that we're trying to run it after. So, that sentence just doesn't apply. Okay. We think that the trial court correctly found that substantial completion occurred on August 29, 2002 that started the statute of limitations running. The statute of limitations in 214 would apply to accounts 2 for professional negligence, account 3 for implied warranty, and section 205, the five-year statute of limitations under Skinner, would apply to account 6 for alleged fraud. And since by terms of the agreement, all of those causes of action started running at substantial completion, August of 2002. The claims were time-barred four and five years later, respectively. So, August 29, 2006 and August 29, 2007. The school district wants to argue in this court that there is no statute of limitations applicable to fraud, the fraudulent concealment claim. Well, that argument was not yet made in the trial court on summary judgment. Handedly, it had been made at the motion to dismiss stage, but it was not made during the summary judgment stage, and we would contend that that argument has been waived. Even if it hasn't been waived, it doesn't make any sense. Section 205 says it applies to all civil actions not otherwise provided for. All means all. And if section 214, which would normally apply to an architect or an engineer's... Well, what sense does that make? You know, when there's fraud involved, you want to extend the statute of limitations. So I assume that's why subparagraph B of 214 says it doesn't apply. So then you turn... Well, 214 says four years from the time of knowledge. 205 just says five years. So it actually shortens the statute of limitations on fraudulent concealment instead of extending it to apply your argument. Well, actually, section 205 says that it applies to all civil actions not otherwise provided for, and all civil actions not otherwise provided for, comma, shall be commenced within five years next after the cause of action accrued. And by case law... So it doesn't make any sense, but it's the law. Well, no. By case law, section 205 has been... The discovery rule has been applied to section 205. Oh, it has? Okay. Yeah. So, you know, here the parties have contractually agreed to eliminate the discovery rule. So it starts running at substantial... The statute of limitations, respectively, starts running at substantial completion. There is a cause of... I'm sorry, there is a statute of limitations that's applicable to every cause of action in Illinois except for murder, and we demonstrated that in the Black case. What about counsel's argument on this Midwest, whatever the Midwest case was? Does that, in fact, say that there cannot be a substantial completion of the contract if the contract is breached? No. Actually, and that case is... Midwest builder? Right. That case is very distinguishable. And that court actually said, and I quote, contractual time limits on bringing suit against a party are not automatically invalid as a matter of law. When they're clear on their face, they must be strictly... I'm sorry, they may be strictly enforced. So, no. And it wouldn't make any sense to hold that statute of... I'm sorry. It wouldn't make any sense to hold that there's no... The statute of limitations provision would not apply where there's a breach because that's when the statute of limitations, in fact, should be applied. So, if there are no other questions from the panel, I think that I have addressed about everything. I believe so. So, on that, we would ask that the trial court... Thank you, Mr. Chamberlain. Mr. Berticchio, rebuttal, please. Thank you, Your Honor. Start where Justice Cook's question ended. Is that what Midwest builder said? I'm quoting. It's 383 and only appelled third at 665. Where the plaintiff alleges that the defendant, quote, failed to comply with the terms of the party's agreement, this claimed breach of contract, if true, is an impediment to completion. There's been the claim here. There's been no showing, no attempt of showing, no suggestion of showing at White's end on summary judgment that it made any attempt, any completion of the contractual obligations. Interestingly, we heard some things a few minutes ago that would respectfully request the court take note of. The statute of limitation provision is two sentences. We just heard that the first sentence doesn't apply. It doesn't apply to White because it deals with the contract between the school district and its contractor. I'm quoting now from page 14 and 15 of White's brief. Quote, White's agreement is not part of the contract documents. The school district's agreement with White is simply not one of the contract documents. That's what White says. The first sentence of substantial completion of the statute of limitations provision doesn't apply. White concedes the point. That leads us to the second sentence. Here's what White said about the second sentence. There's only two sentences in the clause. Now I'm reading from page 16 of White's brief. Statute of limitations provision, quote, does not apply to this case and is irrelevant to the instant case. Second sentence. According to White, page 16 of his brief, does not apply to this case and is irrelevant to the instant case. There's two sentences. The record relied on two sentences. White has told you in his brief and again today. They don't apply to the case. Waiver. I was perplexed about it in the brief and I'm perplexed today. Just commend the court to the record, pages 2989-2999. RC-2989 through RC-2991. The specific argument about fraud and statute of limitations was raised at summary judgment. It's raised again today. We heard that it's an integrated agreement, but let's not parse between labels. Let's not talk about labels. Well, we have to talk about labels because the whole theory of the summary judgment motion was that statute of limitations clause was merged, was merged into the pre-referendum agreement. The cases tell us that an integration clause is not a merger clause tied to the Midwest Builders case. Justice Cook asked, isn't it troubling? Isn't it troubling that they would have had a study done when the school district was concerned with subsidence. They had a study done and didn't give it to the school district and then a year later enter into a contract that says, by the way, the statute is going to start to run four years after we're done working. Isn't that troubling? Well, of course it's troubling because it allows for a situation where a party can say, I'll agree to do this, not do it, fraudulently hold information back, and then later rely on an after-the-fact negotiated clause to say, but you can't sue me for fraud because you agreed the statute was going to run. Well, the legislature finds it troubling too, and that's why they promulgated 214E, because 214E takes care of the troubling problem because it says with regard to fraudulent representation. This is the only cause of action in the state of Illinois that does not have a statute of limitations, as counsel said, other than murder. There has to be a statute that deals with the issue, and here, and that's what the case, and we've talked about this in the brief, Your Honor. The case that was cited by White says there has to be a statute for every claim, there has to be a statute of limitations provision for every claim. The legislature has to deal with it. The legislature dealt with it in 213E. Now, that doesn't mean that the school district can go on and on and on after it discovers its claim. It would still be bound, we cited the cases in the brief, it would still be bound by concepts of laches, it would still have a duty to file its claim within a reasonable time. There's no question about that. The brief cited the case in the construction area. Laches applies. The school district could not just sit and sit and sit. It would have to act reasonably. I would submit to the Court that four months, March 2009 to August 2009, certainly passed the test of reasonable. Counsel told this panel, well, it's not clear that we even had that report. For the purpose of today, it's clear. It's alleged in paragraph 101 of the complaint that the report was delivered to White. White never contested that issue at summary judgment, did not submit any summary judgment evidence, no affidavit saying we didn't have that report. Because it went unrebutted, the case law is the school district can sit on its complaint on that issue. So to say it's not clear that we have the report, maybe someday that issue will come up. But for today's purposes, it's clear. Your Honors, we would respectfully request that this panel reverse the trial court's grant of summary judgment in favor of White to revamp this matter further. Thank you very much for your time. Thank you. We'll take this matter under advisement and stand in recess until further call.